

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**



Signed January 2, 2008                                                                            **United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| GARY HIGGINS and | § | CASE NO. 05-43647-DML-7 |
| ROSARIO MARIA HIGGINS, | § | |
| | § | |
| Debtors. | § | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

The objections to the proof of claims of Gunter and Elisa Rauch (collectively, "Rauch"), filed by Founders Equity Securities, Inc. ("Founders") were heard by the court on October 23, 2007, and the court, having heard the evidence and considered the briefs and arguments of counsel, now makes the following:

**I. FINDINGS OF FACT**

1. Elisa Rauch is the sister of Rosario Higgins.

2. From 1982 through 1996 or 1997, Rauch advanced a total of $825,000 to Gary Higgins.

3. During this time, Rauch made five discrete advances to Higgins or entities associated with Higgins at the direction of Higgins.

4. Rauch's first advance to Higgins was in the amount of $25,000 on June 3, 1982.

5. According to Rauch, the first advance was a loan payable on demand.

6. Rauch made a second advance to Higgins on or about October 25, 1983 in the amount of $100,000.

7. The second advance was by check payable at Higgins's direction to Mid Cities Car Wash, Inc.

8. According to Rauch, the second advance was a loan payable on demand.

9. Rauch made a third advance to Higgins on or about March 23, 1993 in the amount of $100,000.

10. According to Rauch, the third advance was a loan payable on demand.

11. Rauch made a fourth advance to Higgins on December 26, 1995 in the amount of $400,000.

12. According to Rauch, the fourth advance was a loan payable on demand.

13. Rauch became a shareholder in Colonial Car Wash, Inc. ("Colonial") on January 1, 1996.

14. At that time, Higgins converted Rauch's demand loans to equity.

15. Thereafter, Rauch made a fifth advance to Higgins in August 1996 in the amount of $200,000.

16. The fifth advance was by check payable at Higgins's direction to Colonial Car Wash, Inc.

17. Prior to December 1998, Higgins had regularly paid interest to Rauch.  Higgins stopped paying interest on the demand loans to Rauch in December 1998.

18. In December 1998, Higgins informed Rauch that he wanted to sell Colonial to Mace Securities International, Inc. ("Mace").

Findings of Fact and Conclusions of Law
G:\ORD-Server\activePDF\Sign\Temp\33280_433125.doc
Page 2 of 6

19. At that time, Rauch demanded repayment of his principal but Higgins refused.

20. Higgins persuaded Rauch to accept an equity interest in Mace and Higgins orally agreed to guarantee the performance of Mace.

21. Rauch received approximately 68,967 shares of Mace stock (the "Rauch Shares") worth, at that time, approximately $461,000. The shares were subject to a sale restriction that prevented their sale for one year.

22. The Rauch Shares were delivered to Rauch and were held in Rauch's name.

23. Eighteen months after Rauch received the Rauch Shares, Rauch sold the shares to Consolidated Car Wash Management, Inc. ("Consolidated").

24. The bill of sale respecting the Rauch Shares reflects it was executed on July 1, 2000.

25. The agreed sales price stated in the bill of sale was $1,000,000.

26. The Rauch Shares were transferred to Higgins and not to Consolidated.

27. Higgins sold the Rauch Shares and paid the proceeds of the sales, totaling approximately $88,000 to Rauch.

28. At the time of the transaction, the Rauch Shares had a market value of $1.4687 per share.

29. Contemporaneously with the sale of the Rauch Shares to Consolidated, Higgins, on behalf of Consolidated, executed a Promissory Note (the "Note") dated July 1, 2000, payable to Rauch in the principle amount of $1,000,000.

30. Consolidated Car Wash Management, Inc. ("Consolidated") was the maker of the Note. Higgins guaranteed the Note.

31. Higgins was not authorized to execute the Note on behalf of Consolidated.

32. The Note called for payments of $11,000 per month.

Findings of Fact and Conclusions of Law
G:\ORD-Server\activePDF\Sign\Temp\33280_433125.doc
Page 3 of 6

33. The $11,000 payments were made under the Note until February of 2001, with the last such payment being made on or about February 2, 2001.

34. After February 2, 2001, Higgins's payments under the Note were smaller and erratic.

35. On or about June 21, 2001, Rauch and Higgins executed a Memorandum of Understanding (the "Memorandum").

36. The Memorandum states that the Note is cancelled, that Rauch surrendered the Note to Higgins and that the Note is of no effect.

37. The Memorandum states that, although Higgins desired to reimburse Rauch for his investment losses, Higgins has no legal obligation to do so.

38. As of the time that Higgins and Rauch entered into the Memorandum, Higgins stopped payment of the amounts called for under the Note.

39. Although the Memorandum references a promissory note with Higgins as the maker, Rauch understood the note referenced in the Memorandum to be the Note.

40. On October 1, 2002, Gary and Rosario Higgins made a promissory note (the "2002 Note") to Rauch.

41. The first payment was not due on the 2002 Note until April 1, 2003.

42. On April 7, 2005, Gary Higgins and Rosario Maria Higgins filed with this court a Voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code.

43. On October 21, 2005, Rauch filed Proof of Claim No. 2 in the amount of $120,700.00. This claim related to the 2002 Note.

44. Also on October 21, 2005, Rauch filed Proof of Claim No. 3 in the amount of $756,000.00. This claim related to the Note.

45. On February 22, 2006, Rauch filed Proof of Claim No. 10 in the amount of $1,491,957.00.

46. Proof of claim 10 was intended to amend and replace proofs of claim nos. 2 and 3.

47. At the time of the filing of the Higgins's bankruptcy case the balance owed on the 2002 Note was $119,284.

48. Founders filed an objection to proofs of claim nos. 2, 3 and 10, asserting that the debt alleged therein is not enforceable against Higgins.

## II. CONCLUSIONS OF LAW

1. This matter is subject to the court's core jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(B).

2. A proof of claim executed and filed as provided by the Federal Rules of Bankruptcy Procedure (the "Rules") constitutes prima facie evidence of the validity and amount of the claim.

3. Rauch's claims were executed and field as provided by the Rules.

4. A claim is allowed unless objected to.

5. A party objecting to a claim has the burden of going forward. Once sufficient evidence has been introduced to overcome the prima facie validity of the claim, the party that would have the burden of proof in a non-bankruptcy forum has the burden of proving up the claim or the objection as the case may be.

6. Whatever liability Higgins had to Rauch by reason of the Note was extinguished by the Memorandum.

7. Founders has not introduced sufficient evidence to overcome the prima facie validity of Rauch's claim as to the 2002 Note.

8.   Rauch's claim 10 should be allowed in the amount of $119,284.

Having made these conclusions of fact and law, there are no other conclusions necessary to support the court's judgment. To the extent that any conclusion of law is deemed to be a fact issue, then such conclusion is a finding of fact of this court. Furthermore, to the extent that any finding of fact is deemed to be a legal issue, then such finding is a conclusions of law of this court.

# # # END OF ORDER # # #